# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **NOREEN W. SWANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. CIV-24-102-GLJ** |
| | ) | |
| **STATE OF OKLAHOMA, ex rel.** | ) | |
| **The Regional University System of the** | ) | |
| **Oklahoma Board of Regents d/b/a** | ) | |
| **Northeastern State University,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |

## ORDER

This matter comes before the Court on Defendant's Motion to Dismiss and Brief in Support. *See* Docket No. 11. Plaintiff brings this case for sex discrimination and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. (Count I) and Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681-1688 (Count II), and retaliation under Title VII and Title IX (Count III). *See* Docket No. 2. For the reasons stated below, Defendant's Motion to Dismiss and Brief in Support [Docket No. 11] is GRANTED IN PART and DENIED IN PART.

### Procedural Background

On March 19, 2024, Plaintiff filed her complaint in this matter. Plaintiff alleges that in May 2022 she began working as a Graduate Assistant in the Northeastern State University's ("NSU") Graduate College for both financial compensation and tuition credit in furtherance of her goal of becoming a college professor. *See* Docket No. 2, ¶¶ 6-7.

Plaintiff's direct supervisor was Joshua McCollum and McCollum's supervisor was Dr. Cari Keller, who was Dean of NSU's Graduate College. *Id*., ¶ 6. Approximately one week into her position as a Graduate Assistant, McCollum began sexually discriminating against and harassing Plaintiff. Plaintiff alleges that, *inter alia*, McCollum inappropriately touched her, including grabbing her buttocks once, rubbing her pants buttons touching her hip and inner thigh and putting his hands on her waist, made inappropriate remarks about her appearance and clothing daily, and asked her questions about her sexual history as well as her private and dating life. *Id*., ¶ 10. Plaintiff alleges the discrimination and harassment began around May 19, 2022 and continued to August 2, 2022. *Id*., ¶ 11. Plaintiff alleges that Keller was aware of McCollum's conduct because Keller was present and witnessed some of McCollum's improper comments and sexualized jokes, referred to him as her "walking Title IX violation," and once joked about or made light of McCollum's improper and sexualized conduct. *Id*., ¶¶ 12-13.

Although McCollum's conduct affected her work, outlook and wellbeing, Plaintiff tried to ignore it because she feared the repercussions on her job and academic career. *Id*., ¶ 11. On or around August 3, 2022, however, Plaintiff finally complained to Keller about McCollum's behavior. *Id*., ¶ 14. Plaintiff alleges Keller was not supportive, instead making her summarize her experience in an email to Jean Logue, who is in NSU's Human Resources department. *Id*., ¶15. Later, Keller and Logue met with Plaintiff and led her to believe her complaint would be handled as a Title IX issue. *Id*. After complaining to Keller, Plaintiff was isolated and punished by, *inter alia*, being removed from an internal NSU group chat messaging system used to communicate work events and assignments

among the graduate assistants, removed from off campus recruiting events, and had her office chair removed. *Id.*, ¶¶ 16-18. Although McCollum was transferred to NSU's Broken Arrow campus after Plaintiff's complaint, he continued to have access to the internal chat and was provided good references and recommendations by NSU professors and was allowed to resign from NSU after obtaining new employment. *Id.*, ¶¶ 17, 18 and 20. Keller also told several of Plaintiff's co-workers who witnessed McCollum's conduct to never discuss the matter or what happened, not to discuss anything with Plaintiff, and that Plaintiff may face problems within her program because professors in Plaintiff's department were friends with McCollum and she may need to switch programs. *Id.*, ¶¶ 16 and 19. When Plaintiff complained to Keller that she felt isolated and uncomfortable because of how she was being treated, Keller told her that McCollum was part of the "old boys club" and referred her to NSU's counseling center. *Id.*, ¶ 21.

Prior to her complaint to Keller about McCollum, Plaintiff had received praise and positive responses to her work. *Id.*, ¶ 23. On October 5, 2022, Plaintiff received a negative work review and a reprimand from Keller. *Id.* During the review, Plaintiff alleges Keller became hostile and ended the review early. *Id.* On October 10, 2022, Keller asked Plaintiff to meet with her and Logue, but when Plaintiff's "student advocate" also attempted to attend, Keller and Logue became irritated and told them to leave and called campus security. *Id.*, ¶ 24. Later that day, Logue emailed Plaintiff stating that due to her actions toward her supervisor and voluntarily walking off the job, her resignation was accepted. *Id.*, ¶ 25. Although Plaintiff responded that she was not resigning, Plaintiff was terminated as a Graduate Assistant. *Id.*, ¶ 26.

Although Defendant's Motion asserts it is moving to dismiss pursuant to "Fed. R. Civ. P. (b)(1), (3), (5) and (6)", it appears to only argue substantively for dismissal under Rule 12(b)(6). *See* Docket No. 11. In general, Defendant's Motion argues that Plaintiff fails to plead sufficient facts to plausibly support any of her claims.

## Analysis

### I.   Legal Standard

A Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement . . . To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-557, 570 [internal quotation marks omitted]). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although "the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [her] complaint, the

elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).  This requires a determination as to "'whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'"  *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (*quoting Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).

## II.    Sex Discrimination/Hostile Work Environment Under Title VII (Count I)

Plaintiff asserts a claim for sex discrimination or harassment and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. based on the actions of her NSU supervisors McCollum and Keller.  Plaintiff alleges that Keller had actual knowledge of McCollum's behavior before and after she complained to Keller and that Keller acted with intentional and deliberate indifference to the discrimination and hostile work environment based on Plaintiff's sex.  *See* Docket No. 2, §§ 28-30.  Moreover, Plaintiff alleges her complaints of discrimination, harassment and hostile work environment were a motivating factor in her termination, resulting in lost wages, tuition credit and impediments to her career, and mental anguish and embarrassment.  *Id.*, §§ 32-33.

### A.    Sex Discrimination

Under Title VII, it is unlawful "to discharge any individual, or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove a Title VII violation

through either direct or circumstantial evidence.  *See  Furr v. AT & T Techs., Inc.*, 824 F.2d

1537, 1548-49 (10th Cir. 1987). If the plaintiff proceeds by means of circumstantial

evidence, the Tenth Circuit has explained the burden-shifting framework applicable to such

claims as follows:

> Under the *McDonnell Douglas* framework, the plaintiff must carry the initial
> burden under the statute of establishing a prima facie case of [discrimination
> or retaliation].  Once the plaintiff has established a prima facie case, [t]he
> burden then must shift to the employer to articulate some legitimate,
> nondiscriminatory reason for its employment action. If the defendant makes
> this showing, the plaintiff must then show that the defendant's justification
> is pretextual.

*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000) (internal

quotation marks and citations omitted).  To state a prima facie case of discrimination under

Title VII, Plaintiff must allege: (1) she belongs to a protected class; (2) she "suffered an

adverse employment action"; and (3) the challenged action took place under circumstances

giving rise to discrimination.  *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

However, the Supreme Court has held that ordinary pleading standards apply to Title VII

complaints.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).  Thus, pleading the

elements of a prima facie case for sex discrimination, although helpful, is not required at

the pleading stage.  *Id*. at 510-11;  *Khalik*, 671 F.3d at 1193 ("while Plaintiff is not required

to set forth a prima facie case for each element, she is required to set forth plausible claims

[to survive a 12(b)(6) motion to dismiss]"). To survive a motion to dismiss, "[a] complaint

raising a claim of discrimination does not need to conclusively establish the prima facie

case of discrimination, but it must contain more than '[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements."  *Bekkem v. Wilkie*, 915

F.3d 1258, 1274 (10th Cir. 2019). Moreover, the Supreme Court has held that "[s]o long as the plaintiff's sex was one but-for cause of [an adverse employment action], that is enough to trigger [Title VII]." *Bostock v. Clayton Cty. Ga.*, 140 S. Ct. 1731, 1739 (2020).

Defendant moves to dismiss Plaintiff's Title VII sex discrimination claim because Plaintiff does not allege that Logue terminated her "because" of her sex or even knew of Plaintiff's allegation and fails to allege facts supporting an inference of discrimination related to her termination. *See* Docket No. 11, pp. 6-7. Defendant seeks to limit Plaintiff's claim of an "adverse employment action" by focusing solely on her termination. *Id*. (Plaintiff does not allege "Logue terminated her 'because' of her sex" and Plaintiff "does not put forth any allegations to support an inference of discrimination related to her termination"). While Plaintiff claims sexual harassment and discrimination based on her termination, she also alleges sexual harassment and discrimination based on her direct supervisor's actions and his supervisor's knowledge of and failure to do anything to stop McCollum's conduct toward Plaintiff before her termination. Plaintiff alleges McCollum was her supervisor and he engaged in harassing and discriminatory conduct related to her sex. *See* Docket No. 2, ¶¶ 6 and 9-10. Although Plaintiff was later terminated, McCollum was simply moved to another NSU campus, was allowed to continue to work and received positive recommendations from NSU professors while he sought and obtained new employment. *Id*., ¶ 20. Plaintiff vaguely alleges that McCollum's constant harassment affected her work, outlook and wellbeing but offers no specific facts. *Id*., ¶ 11. Plaintiff specifically alleges Keller witnessed at least some of McCollum's conduct towards

Plaintiff and did nothing to stop it, even joking about it and referring to McCollum as her "walking Title IX violation." *See* Docket No. 2, ¶ 12.

Defendant incorrectly asserts that Plaintiff does not allege Logue was aware of Plaintiff's allegations before she was terminated.  In fact, Plaintiff alleges that after complaining to Keller about McCollum's conduct on August 3, 2022, Keller had Plaintiff email Logue summarizing her bad experiences. *Id*., ¶ 15.  While Plaintiff does not identify the precise date of this email, in the context of the Complaint it is reasonable to infer that it came immediately or shortly after Plaintiff complained to Keller on August 3, 2022. Moreover, Plaintiff alleges Keller brought Plaintiff to Logue after her complaint about McCollum and both Keller and Logue led Plaintiff to believe her complaint would be handled as a Title IX issue. *Id*., ¶ 15.  Again, based on the context of the allegation, it can be inferred that this meeting was after her complaint to Keller but before the October 5 or October 10, 2022 meetings.

The Tenth Circuit liberally defines what constitutes an adverse employment action. *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1150 (10th Cir. 2005) ("Because of the remedial nature of Title VII lawsuits, we broadly define adverse employment action."). The Tenth Circuit has stated:

> Such actions are not simply limited to monetary losses in the form of wages or benefits.  Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand.  Nevertheless, we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action.

*Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998) (internal quotation marks omitted) (citations omitted).  *See Proctor v. United Parcel Serv.*, 502 F.3d at 1208.  An

adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 64 (2006). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d at 1133 (internal quotation marks omitted) (quoting *White*, 548 U.S. at 68). Acts that carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may be considered adverse actions, although "a mere inconvenience or an alteration of job responsibilities will not suffice." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004) (internal quotation marks omitted) (citation omitted).

Even taking Plaintiff's allegations as true, she does not adequately allege facts plausibly supporting a sex discrimination claim under Title VII. Specifically, Plaintiff does not allege facts that she suffered an adverse employment action that took place under circumstances giving rise to an inference of discrimination. While Plaintiff alleges that McCollum harassed her due to her sex, she does not allege any specific adverse employment action occurred because of his conduct *before* she complained to Keller. Indeed, Plaintiff alleges she received praise and positive responses to her work before she complained to Keller. *See* Docket No. 2, 23. At most, Plaintiff makes only the conclusory allegation that McCollum's harassment affected her work, outlook and wellbeing. To survive a motion to dismiss, "[a] complaint raising a claim of discrimination does not need to conclusively establish the prima facie case of discrimination, but it must contain more

than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Bekkem*, 915 F.3d at 1274. All of Plaintiff's allegations regarding her treatment after complaining to Keller relate to her retaliation claim discussed below but not to her discrimination claim. Similarly, Plaintiff does not allege that Keller or Logue's treatment of her after her complaint took place because of her sex, as opposed to potential retaliation for her complaint. Thus, Plaintiff does not allege that her sex was a motivating factor in any adverse employment action. Therefore, to the extent Count I attempts to assert a claim for sex discrimination under Title VII, it fails to allege facts sufficient to state a plausible claim.

## B.    Hostile Work Environment

Within Count I Plaintiff also asserts a claim for hostile work environment. *See* Docket No. 2, ¶ 28.[1] "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005). "The elements of a hostile work environment claim are: (1) the plaintiff is a member of a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic (in this case, [sex]); and (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Asebedo v. Kans. State Univ.*, 559 Fed. Appx. 668, 670

---

[1] "[A]s a structural matter, the Title VII Complaint is deficient because it purports to assert multiple claims for relief within each 'Claim for Relief.'" *Park v. TD Ameritrade Tr. Co.*, 2010 WL 4608225, at *2 (D. Colo. Nov. 5, 2010). Nonetheless, because Defendant's Motion addresses the Title VII hostile work environment claim separately from the Title VII discrimination claim, the Court will also consider it separately for purposes of the Defendant's Motion.

(10th Cir. 2014) (citing *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1262-63 (10th Cir. 2005)).

In the Tenth Circuit, the severe and pervasive nature of the alleged harassment must be established under both objective and subjective standards. *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1023 (10th Cir. 2001). To satisfy the subjective aspect of a hostile work environment, Plaintiff must show that she "subjectively perceive[d] th[at] environment to be abusive." *Id.* (second alteration in original). The objective component of a hostile work environment claim requires Plaintiff to present evidence that a "reasonable person" would find the same harassment so severe and pervasive that the workplace is objectively hostile or abusive. *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012). The Court must consider the totality of the circumstances and consider factors such as the frequency of the discriminatory conduct, the severity, whether the conduct is physically threatening or merely an offensive utterance, and whether the conduct unreasonably interferes with the employee's work performance. *Id.* "[T]hat [objective] inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). "Conduct which is considered normal and appropriate in one setting may be deemed abusive or hostile in another." *EEOC v. Fairbrook Med. Clinic, PA*, 609 F.3d 320, 328 (4th Cir. 2010).

The Tenth Circuit describes pervasiveness and severity as "independent and equal grounds" by which a plaintiff may meet this element of a hostile work environment claim,

but the grounds "'are, to a certain degree inversely related: a sufficiently severe episode may occur as rarely as once . . . , while a relentless pattern of less harassment that extends over a long period of time also violates the statute.'" *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008) (alternation in original) (quoting *Cerros v. Steel Techs, Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002)).

Title VII does not establish "a general civility code," *Oncale*, 523 U.S. at 81, for the workplace, *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1263 (10th Cir. 2005). Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim. *See*, *e.g.*, *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (discussing the Supreme Court's hostile work environment decisions, and stating that "[a] recurring point in these opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment" (citation omitted) (quoting *Oncale*, 523 U.S. at 82 (internal quotation marks omitted)); *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir.2008) ("Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life."); *DeNovellis v. Shalala*, 124 F.3d 298, 310 (1st Cir. 1997) ("Not all offensive conduct is actionable as harassment; trivial offenses do not suffice."). "An employer creates a hostile work environment when 'the workplace is permeated with discriminatory intimidation,

ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 851 (10th Cir. 2007) (quoting *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998)) (internal quotation marks omitted).

Defendant argues that Plaintiff's allegations fail because the alleged acts do not rise to the required level of severe or pervasive to alter the conditions of her employment.  In doing so, Defendant downplays many of Plaintiff's allegations and ignores others. Considering the totality of the allegations, Plaintiff does plausibly allege a hostile work environment claim.  Plaintiff alleges a constant string of unwanted comments from May 19, 2022 through August 2, 2022 about her appearance, her  attire, her sex life and history, and her dating life.  *See* Docket No. 2, ¶ 10.  Plaintiff also alleges multiple instances of McCollum inappropriately touching her, including on her buttocks, inner thigh, hip, and waist.  *Id*.  Plaintiff alleges McCollum made comments about wanting to discuss the "hotel situation" on overnight work trips and contacted her outside of work.  *Id*.  Plaintiff also alleges McCollum made inappropriate comments and sexualized jokes in front of Plaintiff and Keller, his supervisor, who made light of McCollum's conduct.  *Id*., ¶ 12.  McCollum also taped a Title IX training certificate to his desk, which considering Keller's statement that McCollum was her "walking Title IX violation," could be view as harassing.   *Id*. Considered in their totality, McCollum's alleged comments and conduct, along with Keller's apparent knowledge and lack of action to stop it, could be considered well beyond "run-of-the-mill boorish, juvenile, or annoying behavior."  *Faragher*, 524 U.S. at 788.

Moreover, although Plaintiff merely alleges that McCollum's harassment affected her work, outlook and wellbeing, "[i]n order to prevail on the subjective component of this test, the law does not require a plaintiff to show that the discriminatorily abusive work environment seriously affected her psychological well-being or that it tangibly impaired her work performance." *Davis*, 142 F.3d at 1341 (citation omitted).  It is reasonable to infer that McCollum's conduct altered a term or condition of Plaintiff's employment and it was an abusive environment.  Accepting Plaintiff's allegations as true, it is plausible that Plaintiff was subjected to a hostile work environment because of her sex.  Therefore, Plaintiff plausibly states a hostile work environment claim under Title VII in Count I of her Complaint.

### III.   Sex Discrimination and Harassment Under Title IX (Count II)

Plaintiff alleges a claim for sex discrimination and harassment under Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681-1688.  Title IX prohibits discrimination "on the basis of sex" in educational programs or activities receiving federal funding.  20 U.S.C. § 1681(a).  This includes a prohibition on employment discrimination in federally funded educational programs.  *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535–36 (1982).  Title IX may be enforced only against the recipient of federal funds and the funding recipient may only be liable in damages under Title IX for its own misconduct. *Davis ex rel. Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640 (1999).  Thus, to be held liable under Title IX, the funding recipient itself must have, based on sex, acted to exclude a person's participation in, deny a person the benefits of, or subject

a person to discrimination under an education program or activity that receives federal financial assistance. *Id*. at 640-41.

To state a Title IX claim, Plaintiff must demonstrate that the school "(1) has actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively offensive as to . . . deprive access to the . . . opportunities provided by the school." *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008); *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006). In that regard, the substantive standards that govern Title VII sex discrimination apply, as well, to Title IX claims. *See Davis*, 526 U.S. at 651 (adopting the "severe, pervasive, and objectively offensive" standard in the context of Title IX that had been previously established in the context of Title VII in *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Thus, "[b]roadly speaking, a hostile environment claim requires the victim to have been subjected to harassment severe enough to compromise the victim's employment . . . opportunities and, in the case of a Title IX claim (but not under Title VII), the institution must have had actual knowledge of the harassment and have exhibited deliberate indifference to it." *Wills v. Brown Univ.*, 184 F.3d 20, 26 (1st Cir. 1999).

Defendant's Motion argues only that, because Title IX encompasses the same server, pervasive and objectively offensive standard as Title VII, Plaintiff fails to state a Title IX claim. *See* Docket No. 11, p. 10. Although Defendant does not address the other elements necessary for a Title IX claim, Plaintiff alleges the necessary facts to plausibly state such a claim. To satisfy the "actual knowledge" element of a Title IX claim, Plaintiff

must show that "an appropriate person . . . had actual knowledge of discrimination" in the funding recipient's (here NSU's) program. *Escue*, 450 F.3d at 1153. Plaintiff alleges that Keller witnessed instances of McCollum's harassment yet did nothing. Indeed, Plaintiff alleges Keller told Plaintiff's coworkers who had witnessed McCollum's conduct to never discuss what happened and not to discuss it with Plaintiff. *See* Docket No. 2, ¶¶ 16 and 19. As Dean of the Graduate College, Keller is alleged to have been an appropriate person to address the harassment and Plaintiff directed her complaint to Keller. *Id.*, ¶ 15. Moreover, Plaintiff alleges Logue, who is in NSU's human resources department, was aware of her complaint. *Id.*

Plaintiff also alleges NSU was deliberately indifferent to her harassment by McCollum. A funding recipient may only be considered "deliberately indifferent" "where [its] response to the harassment or lack thereof is clearly unreasonable considering the known circumstances." *Davis*, 526 U.S. at 648. The school's "deliberate indifference must, at a minimum, cause [Plaintiff] to undergo harassment or make [her] liable or vulnerable to it." *Id.* at 644-45. Again, Plaintiff alleges Keller and Logue were both aware of and did nothing to stop McCollum's harassing conduct towards her. *See* Docket No. 2, ¶¶ 14-16. Keller allegedly even made light of or joked about McCollum's behavior and that he was her "walking Title IX violation." *Id.*, ¶12. Keller also told Plaintiff's co-workers that Plaintiff might have to switch departments because most of the professors were friends with McCollum and McCollum was part of the "old boys club." *Id.*, ¶¶ 19

and 21.  Therefore, Plaintiff alleges facts that are facially plausible that NSU acted with deliberate indifference to Plaintiff's harassment.

Finally, as noted above, Plaintiff alleges facts that not only did McCollum create a severe, pervasive, and objectively offensive hostile work environment, but that Keller was aware of McCollum's conduct, had the authority to address such conduct, failed to address such conduct, and took retaliatory actions against Plaintiff for reporting McCollum's conduct, including ultimately her termination.  *Id.*, ¶¶ 40-43.  Therefore, Plaintiff alleges facts that plausibly assert a Title IX claim.

## IV.     Retaliation Claim (Count III)

Plaintiff asserts a claim for retaliation under Title VII and Title IX.  *See* Docket No. 2, ¶¶ 49-55.  Under Title VII, it is unlawful to retaliate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).  To state a prima facie case of retaliation, Plaintiff must allege: "'(1) that [s]he engaged in protected opposition to discrimination, (3) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'"  *Khalik*, 671 F.3d at 1193) (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011)).  An employee engages in protected activity only if she opposes an unlawful employment practice.  *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002).  Title IX also prohibits retaliation against individuals because they have complained

of sex discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005) (interpreting Title IX as creating a private right of action for such a claim).

Defendant does not dispute that Plaintiff engaged in protected opposition to discrimination but argues that she does not allege facts supporting the second and third elements of a retaliation claim. Defendant argues Plaintiff's single negative review is insufficient to allege an adverse employment action. *See* Docket No. 11, p. 11. Defendant further argues that Plaintiff voluntarily walked out of her job duties, thereby justifying her termination. *Id*. Lastly, Defendant argues the two-month gap between Plaintiff complaining about McCollum to Keller and her negative review and termination do not support a causal connection. *Id*.

To establish an adverse employment action, Plaintiff must show "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. at 68 (internal quotation marks omitted) (emphasis added). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). Generally, "petty slights, minor annoyances, and simple lack of good manners" do not qualify. *White*, 548 U.S. at 68. "Otherwise, minor and even trivial employment actions . . . would form the basis of a discrimination suit." *Johnson v. Weld County*, 594 F.3d 1202, 1216 (10th Cir. 2010) (internal quotation marks omitted). Adverse conduct must carry "a significant risk of humiliation, damage to reputation, and a concomitant harm

to future employment prospects" to be considered actionable.  *Annett*, 371 F.3d at 1239 (internal quotation marks omitted).

Defendant again seeks to minimize some and ignore other allegations, as well as dispute the factual allegations regarding Plaintiff's termination.  *See* Docket No. 11, p. 11. However, Plaintiff alleges more than one negative review or pretty slights.  Plaintiff alleges that after complaining to Keller  she was isolated and punished in several ways, including being removed from an internal NSU group chat messaging system thereby being excluded from communications regarding work events and assignments, being removed from off campus recruiting events, and having her office chair removed.  *See* Docket No. 2, ¶¶ 16-18.  Additionally, Plaintiff was ultimately terminated.  Taking Plaintiff's allegations as true as the Court must at this stage of the litigation, she has alleged facts sufficient to state that a reasonable employee would have found the challenged actions materially adverse.

To establish the causal connection element, Plaintiff must allege "circumstances that justify an inference of retaliatory motive."  *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014).  "If the protected conduct is *closely followed* by the adverse action, courts have often inferred a causal connection."  *Id.*  (emphasis added); *see also*, *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir.1996) ("protected conduct followed closely by adverse action may justify an inference of retaliatory motive.").  However, a three-month gap between protected activity and an adverse action has been held to be too long to support an inference of causation on its own.  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).  Where a gap of three months or longer has occurred, a plaintiff must allege other

facts, "'more than mere speculation, conjecture, or surmise'" to establish that her protected activity was a but-for cause of the adverse employment action. *Ward*, 772 F.3d at 1203 (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

Plaintiff alleges adverse employment actions began shortly after she complained to Keller and her negative review came approximately two-months after her complaint. These actions came well within the three-month period supporting an inference of causation. Moreover, Plaintiff alleges other actions by Keller that plausibly support a claim that Plaintiff's complaint about McCollum was one but-for cause of her negative review and termination. Therefore, Plaintiff plausibly alleges a retaliation claim in Count III of her Complaint.

## Conclusion

Accordingly, Defendant's Motion to Dismiss and Brief in Support [Docket No. 11] is GRANTED IN PART and DENIED IN PART. Defendant's Motion to Dismiss Plaintiff's claim for sex discrimination in Count I under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. is granted for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), but the remainder of Defendant's Motion is denied as to Count I (hostile work environment), Count II (Title IX) and Count III (retaliation).

IT IS SO ORDERED this 12th day of July 2024.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**